UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| DAVID L. COLEMAN,                    ) | No. CV 07-04450-VBK |
|                                      ) | |
|             Plaintiff,               ) | MEMORANDUM OPINION |
|                                      ) | AND ORDER |
|     v.                               ) | |
|                                      ) | (Social Security Case) |
| MICHAEL J. ASTRUE,                   ) | |
| Commissioner of Social               ) | |
| Security,                            ) | |
|                                      ) | |
|             Defendant.               ) | |

    This matter is before the Court for review of the decision by the Commissioner of Social Security denying Plaintiff's application for disability benefits.  Pursuant to 28 U.S.C. §636(c), the parties have consented that the case may be handled by the Magistrate Judge.  The action arises under 42 U.S.C. §405(g), which authorizes the Court to enter judgment upon the pleadings and transcript of the record before the Commissioner.  The parties have filed the Joint Stipulation ("JS"), and the Commissioner has filed the certified Administrative Record ("AR").  This Memorandum Opinion will constitute the Court's findings of fact and conclusions of law.

    For the reasons to be set forth in this Decision, the Court

**ORDERS** this matter remanded for further hearing.

**I**

**INTRODUCTION**

Plaintiff was born on July 17, 1975.  In 1985, at the age of 9, he was found to be disabled under the childhood criteria of Medical Listing 1.03.03A, for asthma. (AR at 16.)  A Disability Determination and Transmittal dated December 1992 indicates that Plaintiff at that time continued to merit this Listing.  In a Case Assessment Form dated August 29, 2001, an administrative continuance was ordered based on a Continuing Disability Review ("CDR"), in which it was determined that, "CPD [Comparison Point Decision] folder lost and unable to reconstruct." Diagnoses indicated were asthma, sinusitis, reflux, and acute back pain. (AR 262.)  Plaintiff received notice from the Commissioner that he would continue to receive disability payments under SSI, but that his eligibility for benefits would be reviewed again in about three years. (Supplemental AR ["Supp. AR"] 434-435.) Thereafter, in May 2004, a cessation of benefits was proposed. (AR 16, Supp. AR 440-443.) This proposed cessation was based on the conclusion of the Commissioner that Plaintiff's conditions had improved significantly and were no longer disabling. (Id.; see 20 C.F.R. §416.990(a).)  As permitted by the regulations, Plaintiff filed a request for reconsideration of the proposed disability cessation. (Supp. AR at 446-447; see 20 C.F.R. §416.989.)  A disability hearing was noticed for March 4, 2005. (Supp AR at 449-451.)  The hearing occurred on that date. (Supp AR 462-474.)  The disability hearing officer issued her decision on March 11, 2005, finding Plaintiff to be not disabled. (AR 475-484.)

Dissatisfied with the decision, Plaintiff sought a hearing before an Administrative Law Judge ("ALJ"), which occurred in Palmdale, California on September 19, 2006. At that hearing, testimony was taken from Plaintiff, who was represented by counsel, and also from a vocational expert ("VE"). (AR 403-425.) An unfavorable decision was issued by the ALJ on November 17, 2006. (AR 16-23.)

Plaintiff asserts the following issues:

1. Whether the ALJ correctly evaluated the determination of disability pursuant to the regulations, in particular, the evaluation of improvement in Plaintiff's medical condition following the August 28, 2001 CDR;

2. Whether the ALJ failed to properly evaluate Plaintiff's claims of depression;

3. Whether the ALJ failed to evaluate Plaintiff's chronic obesity;

4. Whether the ALJ failed to properly credit the opinions of treating physicians;

5. Whether the ALJ made an incorrect credibility finding as to Plaintiff's testimony and that of his witnesses;

6. Whether the ALJ's determination of Plaintiff's ability to perform medium work with certain limitations was erroneous.

(JS at 5.)

//
//
//
//
//
//

# I

# THE ALJ'S DECISION FAILS TO COMPORT WITH THE COMMISSIONER'S REGULATIONS GOVERNING EVALUATION OF CONTINUING DISABILITY REVIEWS

### A.  Applicable Law Regarding Continuing Disability Review.

By regulation, the Commissioner is entitled to periodically evaluate whether a claimant's impairments remain of sufficient severity to cause disability.  This evaluation is called a Continuing Disability Review ("CDR") (20 C.F.R. §416.989(a).)  In conducting the CDR, the Commissioner must review applicable medical evidence and history for at least the preceding 12 months, and then, if the review demonstrates that payment should be stopped, the claimant is notified in writing and given an opportunity to appeal. (Id.)

The regulations also specify how the Commissioner will determine whether disability continues or ends. (See, generally, 20 C.F.R. §416.994.)  In order to determine whether medical improvement has occurred, the regulation requires the Commissioner to,

> "[C]ompare the current medical severity of that impairment(s) which was present at the time of the most favorable medical decision that you were disabled or continue to be disabled to the medical severity of that impairment(s) at that time.  _If medical improvement has occurred, we will compare your current functional capacity to do basic work activities (i.e., your residual functional capacity) based on the previously existing impairments with your prior residual functional capacity in order to determine whether the medical improvement is related to your ability to do work._"

4

(20 C.F.R. §416.994(b)(1)(vii) (emphasis added).)

The regulation further provides that,

> "If there is a decrease in medical severity as shown by the symptoms, signs and laboratory findings, we must then determine if it is related to your ability to do work."

(20 C.F.R. §416.994(b)(2)(ii).)

Significantly, the regulation further requires that,

> "[w]e will assess your residual functional capacity ... based on the current severity of the impairment(s) which was present at your last favorable medical decision."

In cases in which the previous impairment met or equaled a Listing, and in which, therefore, an assessment of a claimant's residual functional capacity would not have been made, the regulations provide that medical improvement is considered to be related to ability to work. (See 20 C.F.R. §416.994(b)(2)(A).)

Finally, the regulations cover the situation in which a prior residual functional capacity assessment should have been made, but was not. In such a case, where the most recent favorable medical decision does not contain a residual functional capacity assessment because it is either missing from the file or was not done, the Commissioner is required to reconstruct the claimant's prior residual functional capacity. The regulation provides that,

> "This reconstructed residual functional capacity will accurately and objectively assess your functional capacity to do basic work activities. We will assign the maximum functional capacity consistent with a decision of

1    allowance."
2 (20 C.F.R. §416.994(2)(iv)(C).)

3

4    The regulation provides an example of an individual previously
5 found to be disabled based on a severe impairment which did not meet
6 or equal a Listing, but in which the prior adjudicator did not include
7 a residual functional capacity assessment in the decision, and the
8 review of the prior evidence does not show that such an assessment was
9 ever made. In that case, the example provides that,

10    "If a decrease in medical severity, i.e., medical
11    improvement has occurred, the residual functional capacity
12    based on the current level of severity of your impairment
13    will have to be compared with your residual functional
14    capacity based on its prior severity in order to determine
15    if the medical improvement is related to your ability to do
16    work. <u>In order to make this comparison, we will review the
17    prior evidence and make an objective assessment of your
18    residual functional capacity at the time of our most recent
19    favorable medical determination, based on the symptoms,
20    signs and laboratory findings as they then existed.</u>"
21 (<u>Id</u>., emphasis added.)
22 //
23 //
24 //
25 //
26 //
27 //
28 //

**B.  Analysis**.

In the ALJ's decision, a specific finding is made that,

> "At the time of the August 2001 CDR, the claimant had the following medically determinable impairments: depression and asthma.  The asthma was found to still meet Childhood Medical Listing 1.03.03A ..."

(AR 21.)

The parties agree that this was an erroneous finding.  The Commissioner indicates that, "The Supplemental AR indicates that at the CDR, Plaintiff's disability was continued due to severe depression resulting from physical condition, with secondary diagnosis of asthma." (JS at 10, fn. 3, citing AR 477, 479-480.)  The Commissioner asserts, however, that any error was harmless.  Plaintiff also concedes that the ALJ made an erroneous citation to this childhood Listing as the basis for the 2001 continuance of disability status. (See JS at 13.)

This error is so fundamental to the ability of this Court to review the ALJ's decision that it merits remand.  The very detailed regulations concerning CDR, cited here by the Court, lead it to the inescapable conclusion that a CDR cannot be performed without a reconstruction and determination of a claimant's residual functional capacity, where the prior favorable decision was not based on a finding that the claimant met any of the Listings.  This Court, therefore, cannot effectively review the ALJ's decision, because it is in substantial lack of compliance with this regulation. Furthermore, the Court cannot, as the Commissioner urges, consider the error to be harmless simply because the ALJ completed an evaluation of Plaintiff's

disability status and ability to work according to the established five-step sequential evaluation process. Moreover, there was medical evidence in the record as of the comparison point decision, which pertained both to medical and mental components. (See Supp. AR at 474.) In addition, other evidence considered in connection with the CDR included Plaintiff's own written statements, his mother's statement, information as to prescription medication, and information from Plaintiff's current treating physician, Dr. Ko. (See Supp. AR at 452-474.)

The Court's analysis is identical with regard to the Plaintiff's second issue, which concerns evaluation of his disabling depression. The Disability Hearing Officer's Decision noted that at the 2001 CDR, "[t]he claimant was granted disability due to his severe depression that stemmed from his physical condition." (Supp. AR at 480.) The ALJ's discussion of the evidence relevant to Plaintiff's mental evaluation at the time of the 2001 CDR takes up merely two sentences in his Decision. (See AR at 21.) Again, there is no evaluation of Plaintiff's mental condition at the time of the 2001 CDR, as the regulation requires. Indeed, the ALJ's conclusion that, "the claimant was also found to be moderately limited by his depression in 2001" (AR 21, Finding 2) does not adequately establish a base point functional capacity so that the appropriate determination can be made according to the regulations. In order to provide guidance on remand, and in particular, with regard to reconstruction of Plaintiff's mental functional capacities at the time of the CDR, the Court will set forth the applicable law with regard to determining and evaluating psychiatric impairments.

In evaluating psychiatric impairments, 20 C.F.R. §404.1520a(e)(1)

and §416.920a(e)(1) require that consideration be given, among other things, to activities of daily living ("ADL"); social functioning; concentration, persistence or pace; and episodes of decompensation. 20 C.F.R. §§404.1520a(c)(1) and 416.920a(c)(1) require that consideration be given to "all relevant and available clinical signs and laboratory findings, the effects of your symptoms, and how your functioning may be affected by factors including, but not limited to chronic mental disorders, structured settings, medication and other treatment."

20 C.F.R. §§404.1545(c) and 416.945(c) require that consideration be given to "residual functional capacity for work activity on a regular and continuing basis" and "A limited ability to carry out certain mental activities, such as limitations in understanding, remembering, and carrying out instructions, and in responding appropriately to supervision, co-workers, and work pressures in a work setting, [which] may reduce your ability to ... work."

The types of relevant evidence to be assessed in making these considerations are set forth in Social Security Ruling ("SSR") 85-16, which include such factors as history, findings, and observations from medical sources, reports of the individual's activities of daily living and work activity, as well as testimony of third parties about the individual's performance and behavior.

Under 20 C.F.R. §404.1520a(c)(2) and §416.920a(c)(2), consideration must be given to the extent to which a mental impairment interferes with an "ability to function independently, appropriately, effectively, and on a sustained basis ..."

The degree of functional limitations in four broad areas (ADLs; social functioning; concentration, persistence or pace; and episodes

of decompensation) are evaluated; that is, as to the first three functional areas, the following five-point scale is utilized: none, mild, moderate, marked, and extreme. With regard to the fourth area, a four-point scale is utilized: none, one or two, three, four or more. (20 C.F.R. §§416.920a(3),(4) and 404.1520a(c)(3),(4).

Following the September 2000 amendments to the regulations which modified 20 C.F.R. §404.1520a(e)(2) and §416.920a(e)(2), the Administrative Law Judge ("ALJ") is no longer required to complete and attach a Psychiatric Review Technique Form ("PRTF"). Instead, these regulations require that in the decision, the ALJ,

> "[M]ust incorporate the pertinent findings and conclusions based on the [PRTF] technique. The decision must show the significant history, including examination and laboratory findings, and the functional limitations that were considered in reaching a conclusion about the severity of the mental impairment(s). The decision must include a specific finding as to the degree of limitation in each of the functional areas described in paragraph (c) of this section." [That is, ADLs; social functioning; concentration, persistence or pace; and episodes of decompensation.]

Further guidance is provided in SSR 85-16, which, although it does not specifically mention concentration, persistence or pace, does note, "Ability to sustain activities, interests, and relate to others over a period of time. The frequency, appropriateness, and independence of the activities must also be considered" as well as "ability to function in a work-like situation."

When there is finding of "moderate" difficulties in the area of

maintaining concentration, persistence or pace, this factor must be included in any hypothetical question posed at a hearing to a vocational expert ("VE"). Thus, one court has held that referring merely to "simple jobs" or "unskilled sedentary work" in a hypothetical question is insufficient to describe and to accommodate difficulties in this functional area. See Newton v. Chater, 92 F.3d 688 (8th Cir. 1996).

The regulations do not provide a standard definition of "moderate." (See 20 C.F.R. §416.902a(c)(4).) They do note, however, that a finding of "none" or "mild" in the first three areas "will generally [mean] that your impairment(s) is not severe, ..." See 20 C.F.R. §920a(d)(1).

The Commissioner has issued a Policy Operations and Manual of Systems ("POMS"), which is an internal employee guidance manual. While not having the force of law, this manual can be persuasive authority. See Warre v. Commissioner, Social Sec. Admin., 439 F.3d 1001, 1005 (9th Cir. 1996). POMS provides guidance for the completion of the Functional Capacity Assessment form (Form SSA-4734-F4-Sup) and instructs that a reviewing source should check "'[M]oderately limited' when the evidence supports the conclusion that the individual's capacity to perform the activity is impaired." The degree and extent of the capacity or limitation should be set forth in a narrative format in the form.

HALLEX is the Hearings Appeals and Litigation Law Manual, which is also an internal agency guide. HALLEX requires that when an ALJ requests a consultative examination, the ALJ should provide the corresponding state agency with a "medical source statement form." (See HALLEX I-2-5-20.) Form HA-1152, the Medical Assessment of

Ability to do Work-Related Activities (Mental), provides definitions for the ratings of none, slight, moderate, marked, and extreme. Thus, moderate rating is defined as "there is moderate limitation in this area but the individual is still able to function satisfactorily."

In <u>LaCroix v. Barnhart</u>, 465 F.3d 881, 888 (8th Cir. 2006), the Eighth Circuit upheld an ALJ's finding that a claimant found to have a moderate limitation in her ability to respond appropriately to work pressures in a usual work setting would still be able to satisfactorily function in this area. (<u>See</u> <u>Id</u>. at 888.) The appellate Court noted that the evaluation form (HA-11) defined moderate as indicating that the individual could still function satisfactorily. (<u>See</u>, <u>Id</u>.)

On remand, the Commissioner's reconstruction of Plaintiff's mental functional capacity as of the 2001 CDR will be reconstructed pursuant to applicable law and regulations.

**II**

**THE RECORD MUST BE DEVELOPED, AND A PULMONARY**

**CONSULTATIVE EXAMINATION MUST BE OBTAINED ON REMAND**

The parties frame Issue No. 4 as whether the ALJ failed to properly credit the opinions of treating physicians, and instead improperly relied on non-treating physicians. (<u>See</u> JS at 23, <u>et</u> <u>seq</u>.) Indeed, the ALJ depreciated the findings and conclusions of Plaintiff's treating pulmonologist, Dr. Ko, although Plaintiff reported seeing Dr. Ko over the past two years almost monthly, and Dr. Ko himself noted seeing Plaintiff every two months. (<u>See</u> AR at 18-19.) The ALJ rejected Dr. Ko's conclusions despite the fact that they were apparently based upon independent testing and diagnosis. The Court

12

has substantial difficulty in crediting the ALJ's depreciation of Dr. Ko's opinion. To some extent, the Decision reflects a rather selective reading of Dr. Ko's notes and conclusions. For example, the ALJ states in his Decision that, "By December 2005, the claimant was reported as doing okay." (AR 19.) The complete notes, however, read as follows:

> "Follow up, doing okay. A lot of allergy problems, congestion. Coughing [with] cloudy phlegm. Sinus headaches."

(AR 385.)

Moreover, the ALJ's rejection of Dr. Ko's diagnosis and conclusions is supported by a general notation that, "Moreover, Dr. Ko's treatment records do not suggest anything close to the severity levels noted in his conclusionary [sic] assessments in 2006." (AR at 19.) This does not constitute the level of specificity and legitimacy of reasons required by case law in order to evaluate the opinion of a treating physician.

In any event, the ALJ's evaluation of Dr. Ko's conclusions is of particular concern because of the circumstances of this case. At issue here is an individual who was approximately 31 years of age at the time of the hearing before the ALJ (AR 406), and who had been judged to be disabled by asthma since he was 9 years old. Clearly, the question of whether Plaintiff's asthma, and/or resulting depression, are no longer disabling must be addressed with care in view of the fact that Plaintiff has been determined to be disabled for most of his natural life. To make a conclusion as to continuing disability without benefit of the informed opinion of an examining

pulmonologist or equivalent specialist is, simply, unacceptable. Therefore, the Court will order that on remand, the Commissioner will obtain a consultative examination from a specialist, who will have the benefit of reviewing pertinent historic records, such as those of Dr. Ko and other physicians, in addition to performing his own tests, in reaching his conclusions.

The Court will not address at length issues pertaining to the determination of Plaintiff's credibility as to his subjective symptoms, or the evaluation of the statements of witnesses. The reason is that much of the ALJ's evaluation of Plaintiff's credibility is based upon a comparison of Plaintiff's self-reporting with the objective medical evidence, and the Court is specifically ordering an expansion of the record and a reevaluation of the medical evidence. Therefore, on remand, the issue of what credibility to be accorded Plaintiff and the witnesses will be evaluated ab initio.

For the foregoing reasons, this matter will be remanded for further hearing consistent with this Decision.

**IT IS SO ORDERED**.

DATED: May 22, 2008                    /s/
                                       VICTOR B. KENTON
                                       UNITED STATES MAGISTRATE JUDGE

14